UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KAYLA D. ROSS,

               Plaintiff,

      V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.

_____

**REPORT AND
RECOMMENDATION**

11-CV-823
(TJM/VEB)

## I. INTRODUCTION

In February of 2007, Plaintiff Kayla D. Ross applied for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since March of 2007 due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorneys, Olinsky Law Group, Michael J. Telfer, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) on January 3, 2013. (Docket No. 26).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on February 28, 2007, alleging disability beginning on March 1, 2007. (T at 112-14, 117-20, 125).[1] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on July 21, 2009, in Syracuse, New York before ALJ John M. Lischak. (T at 29). Plaintiff appeared with her attorney and testified. (T at 36-56). The ALJ also received testimony from Victor Alberigi, a vocational expert. (T at 56-64).

On September 29, 2009, ALJ Lischak issued a written decision finding that Plaintiff was not disabled and was therefore not entitled to benefits. (T at 17-28). The ALJ's decision became the Commissioner's final decision on May 26, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 3-8).

Plaintiff, through counsel, timely commenced this action on July 18, 2011. (Docket No. 1). The Commissioner interposed an Answer on January 25, 2012. (Docket No. 10). Plaintiff filed a supporting Brief on May 11, 2012. (Docket No. 19). The Commissioner filed a Brief in opposition on June 22, 2012. (Docket No. 20). With leave of the Court, Plaintiff filed a Reply Brief on July 10, 2012. (Docket No. 23).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 12).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, it is recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for further proceedings.

## III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); <u>see</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir.1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 14, 2010, and had not engaged in substantial gainful activity since March 1, 2007, the alleged onset date. (T at 22). The ALJ concluded that Plaintiff had the following "severe" impairment, as defined under the Act: dissociative identity disorder. (T at 22-23).

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 23-24). The ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was required to avoid concentrated exposure to fumes, odors, gases,

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

and poor ventilation. (T at 25). In addition, the ALJ found that Plaintiff could understand, remember, and carry out simple instructions, respond appropriately to supervision, co-workers, and usual work situations on a sustained basis, and deal with changes in a routine work setting. (T at 11-12).

The ALJ found that Plaintiff had no past relevant work. (T at 26). Considering Plaintiff's age (17 years old on the alleged onset date), education (limited), work experience (no past relevant work), and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T at 27-28).

Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act between the alleged onset date (March 1, 2007) and the date of his decision (September 29, 2009) and was not entitled to benefits. (T at 28). As noted above, the ALJ's decision became the Commissioner's final decision on May 26, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 3-8).

## 2. Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed. She offers four (4) principal arguments in support of this position. First, Plaintiff contends that the ALJ erred by finding that she did not meet the impairment set forth at § 12.03 of the Listings. Second, Plaintiff argues that the ALJ's residual functional capacity finding is not supported by substantial evidence. Third, Plaintiff challenges the ALJ's credibility determination. Fourth, Plaintiff contends that the ALJ's step five analysis was flawed. This Court will examine each argument in turn.

### a. Listing § 12.03

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

In the present case, Plaintiff contends that her dissociative identity disorder meets

the criteria for the impairment set forth at § 12.03 of the Listings ("Schizophrenic, paranoid and other psychotic disorders"). Specifically, Plaintiff contends that her impairment meets the requirements of Subparts A and B of that Listing.[4]

Subpart A requires proof of the medically documented persistence, either continuous or intermittent, of one or more of the following: (1) delusions or hallucinations, (2) catatonic or other grossly disorganized behavior, or (3) incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following: (a) blunt affect, (b) flat affect; or (c) inappropriate affect. 20 C.F.R. § 404, Subpart P, Appendix 1, Part A, § 12.03 (A).

The record indicates that Plaintiff has experienced persistent auditory hallucinations. In September of 2006, Dr. Ann Robenstein, a treating physician, noted that Plaintiff was reporting "some auditory hallucinations." (T at 209). An October 2006 emergency department report indicated that Plaintiff "hears voices all the time . . . ." (T at 340). Plaintiff's mother reported that Plaintiff experienced auditory hallucinations that persisted despite medication. (T at 220, 225). In April of 2007, Plaintiff told Dr. Dennis Noia, a consultative examiner, that she had "auditory hallucinations of voices 'jumbled up' on a daily basis since about age 12, and visual hallucinations of shadows." (T at 283). In February of 2009, Dr. Jason Stepkovitch, a treating psychiatrist, reported that Plaintiff experienced "stress-related auditory hallucinations," hearing "female voices shouting commands." (T at 363). The ALJ apparently concluded that Plaintiff's hallucinations satisfied Subpart A of Listing § 12.03, as he did not discuss that Subpart in his decision,

---

[4]A claimant may satisfy the Listing by meeting the requirements of Subpart (C) of §12.03, but Plaintiff does not argue that she satisfies that Subpart.

but proceeded directly to a Subpart B analysis. (T at 23-24).

The ALJ concluded that Plaintiff's psychiatric impairment did not satisfy Subpart B of § 12.03. (T at 24-25). Subpart B of the Listing requires proof of at least two of the following: (a) marked restriction of activities of daily living; (b) marked difficulties in maintaining social functioning; (c) marked difficulties in maintaining concentration, persistence, or pace; or (d) repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404, Subpart P, Appendix 1, Part A, § 12.03 (B).

The ALJ found that Plaintiff had moderate restriction with regard to activities of daily living; moderate difficulties with respect to social functioning; moderate difficulties in terms of concentration, persistence, or pace; and some episodes of decompensation, but not of extended duration. (T at 23-24).

Plaintiff challenges the ALJ's finding. In support of her argument, Plaintiff notes several instances of social functioning difficulties, including a shoplifting arrest (T at 222), self-inflicted injuries (T at 225), and difficulty dealing with others (T at 138, 363). Plaintiff also points to a January 2007 mental status review completed by Michelle Panutsos, a psychology intern, and co-signed by a psychologist,[5] which indicated that Plaintiff engaged in self-injurious behavior and had a markedly impaired ability to manage her daily living activities. (T at 229). Plaintiff also notes a history of self-abuse and two suicide attempts. (T at 358).

Dr. Stepkovitch, a treating psychiatrist, co-signed a Medical Source Statement of Ability to Do Work-Related Activities (Mental), dated August 3, 2009, in which he indicated

---

[5]The psychologist's name is illegible. (T at 229).

that Plaintiff had no limitation with regard to her ability to interact appropriately with the public, interact appropriately with supervisors, interact appropriately with co-workers, or to respond appropriately to usual work situations and changes in a routine work setting. (T at 372).

Dr. Noia, the consultative examiner, found Plaintiff be to "cooperative" with "moderately adequate" social skills and a manner of relating. (T at 284). Plaintiff reported that she lived alone and could do laundry, shop, and manage money. (T at 284). She was "sometimes" able to "get [ ] along with family and friends." (T at 285). Dr. Noia opined that Plaintiff could understand and follow simple instructions and directions; perform simple and some complex tasks with supervision and independently; maintain attention and concentration for tasks; regularly attend to a routine and maintain a schedule; learn new tasks; and make appropriate decisions. (T at 285). Dr. Noia indicated that Plaintiff could relate to and interact with others moderately well, but appeared to have difficulty dealing with stress. (T at 285).

Dr. Graff, a non-examining State Agency psychiatric review consultant, opined that Plaintiff had moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (T at 305).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9

(S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

With respect to episodes of decompensation, Plaintiff was hospitalized for four days in September of 2006 with concerns about depression and potential suicidal behavior. (T at 199). Upon discharge, Dr. Abbas Ispahani assigned a Global Assessment Functioning ("GAF")[6] score of 70 (T at 200), which "reflects '[s]ome mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships.'" Kohler v. Astrue, 546 F.3d 260, 262 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.2000)).

Although Plaintiff has pointed to some evidence of limitations in the relevant areas of functioning, substantial evidence supports the ALJ's conclusion that Plaintiff did not have marked in at least two of the domains (activities of daily living; social functioning; maintaining concentration, persistence, or pace) or repeated episodes of extended duration decompensation, as would be required to satisfy Subpart (B) of Listing § 12.03. "Conflicts in evidence . . . are for the Commissioner to resolve." White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. If the Commissioner's decision "rests on adequate findings supported by evidence having rational

---

[6]The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. " Pollard v. Halter, 377 F.3d 183, 186 (2d Cir. 2004).

probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id.  The Court finds the ALJ's assessment that Plaintiff's condition fails to match a listing is supported by substantial evidence.

### b.    RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was required to avoid concentrated exposure to fumes, odors, gases, and poor ventilation. (T at 25).  In addition, the ALJ found that Plaintiff could understand, remember, and carry out simple instructions, respond appropriately to supervision, co-workers, and usual work situations on a sustained basis, and deal with changes in a routine work setting. (T at 11-12).

The ALJ assigned "great weight" to the opinion of Dr. Noia, the consultative

examiner, when rendering his RFC determination. (T at 26). While the ALJ referenced Dr. Noia's finding that Plaintiff would have difficulty dealing with stress (T at 285), the ALJ did not explain how he reconciled this particular finding with his RFC determination, which did not include any stress limitations. (T at 25).

In addition to finding that Plaintiff would have difficulty dealing with stress, Dr. Noia described Plaintiff's prognosis as "guarded," with fair to poor insight and judgment. (T at 284). Her recent and remote memory skills were "mildly to moderately impaired," with a "depressed" mood and "constricted" affect. (T at 284).

In February 2007, Dr. Edward Mehrhof, a psychiatrist who treated Plaintiff on at least one occasion, opined that she suffered from posttraumatic stress disorder and "acute stress disorder." (T at 217).

In February of 2009, Dr. Jason Stepkovitch, a treating psychiatrist, reported that Plaintiff experienced "*stress-related* auditory hallucinations," hearing "female voices shouting commands." (T at 363)(emphasis added).

In August of 2009, David Festa, a vocational expert consulted by the ALJ via interrogatory, opined that a hypothetical claimant with Plaintiff's limitations, education, and work history "could not perform work activity on a full-time consistent basis." (T at 162).

Plaintiff testified that she experienced periods "when everything starts to overwhelm me," which caused self-injurious behavior. (T at 45). Plaintiff testified that she worked part-time in the late summer of 2008 performing office tasks (e.g. answering the phone) at a "Budget Inn" motel operated by family friends. (T at 39, 46-47). According to Plaintiff, the work stress caused a nervous breakdown that required hospitalization. (T at 39, 46-47). Plaintiff also explained that she experiences panic attacks in groups, which involve trouble

breathing and feeling like she is going to pass out. (T at 50).

SSR 85–15 discusses the importance of considering a claimant's ability to deal with stress in the workplace. <u>See</u> SSR 85–15, 1985 WL 56857, at * 5–6 (1985). Because mental illness is "characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings." <u>Id.</u> "Individuals with mental disorders often adopt a highly restricted and/or inflexible lifestyle within which they appear to function well." <u>Id.</u> "The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day." <u>Id.</u>  As such, "the mentally impaired may have difficulty meeting the requirement of even so-called 'low stress' jobs." <u>Id.</u>

In the present case, given the evidence outlined above and the considerations articulated in SSR 85-15, this Court finds that the ALJ's failure to explain why no stress limitations were included in the RFC was an error that requires remand. <u>See</u> <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir.1984) (requiring the Commissioner to set forth "the crucial factors in [his] determination ... with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence.") (internal citations omitted); <u>Stadler v. Barnhart</u>, 464 F. Supp.2d 183, 188–89 (W.D.N.Y.2006)("Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called 'low-stress' jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that

trigger it, and how those factors affect his ability to work.")(quoting SSR 85-15); <u>Lomax v. Comm'r of Social Security,</u> No. 09-CV-1451, 2011 WL 2359360, at *3 (E.D.N.Y. June 6, 2011)("The ALJ failed to address whether plaintiff is mentally capable of dealing with the stress and demands of the workplace. Thus, the ALJ did not fulfill his legal obligation to adequately explain his reasoning in making the findings on which his ultimate decision rests and, in doing so, to address all the pertinent evidence."); <u>Sheffield v. Astrue</u>, No. 11-CV-1176, 2012 WL 5966610, at *2 (N.D.N.Y. Nov. 28, 2012)("While [claimant's] limitations regarding stress may not be debilitating, the ALJ's failure to discuss why no stress limitations were included in the RFC, in light of the above cited evidence, necessitates remand.").

Accordingly, this Court recommends a remand for reconsideration regarding whether and to what extent Plaintiff's difficulties with stress impact her ability to perform the non-exertional demands of unskilled, competitive, remunerative work on a sustained basis.

### c.    Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. <u>See</u> <u>Ber v. Celebrezze</u>, 333 F.2d 923 (2d Cir.1994). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. <u>See</u> <u>Brandon v. Bowen</u>, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. <u>See</u> 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR

96-7p; <u>Gernavage v. Shalala</u>, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." <u>Lewis v. Apfel</u>, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

> 1.   [Plaintiff's] daily activities;
> 2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
> 3.   Precipitating and aggravating factors;
> 4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
> 5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
> 6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

16

> 7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." <u>Young v. Astrue</u>, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting <u>Brandon v. Bowen</u>, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: She hears "conversations" in her head, which distract her from performing tasks like cooking. (T at 41). She has visual hallucinations at night when trying to sleep. (T at 41-42). She has difficulty keeping track of time and suffers from memory lapses. (T at 42). Certain factors (e.g. fire trucks, uniforms, cologne) trigger flashbacks associated with childhood sexual abuse. (T at 42-43). She has difficulty sleeping. (T at 43). Plaintiff has periods of depression and anxiety that cause her to withdraw from personal contact. (T at 45). As discussed above, she experiences periods "when everything starts to overwhelm me," which caused self-injurious behavior. (T at 45). In the late summer, early fall of 2008, stress caused by part-time work precipitated a nervous breakdown that required hospitalization. (T at 39, 46-47). Plaintiff experiences panic attacks in groups, which involve trouble breathing and feeling like she is going to pass out. (T at 50).

The ALJ concluded that Plaintiff's mental determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effect of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (T at 25).

Here, again, the ALJ's failure to address specifically the question of stress is problematic. Plaintiff's testimony regarding a nervous breakdown brought on by the stress of part-time work is consistent with Dr. Noia's conclusion that Plaintiff would have difficulty dealing with stress. (T at 285). The ALJ afforded "great weight" to Dr. Noia's opinion, but did not explain how he reconciled Plaintiff's testimony and Dr. Noia's assessment with an RFC determination that included no limitation regarding stress. (T at 26). The question of Plaintiff's credibility should thus be revisited on remand, with specific findings provided concerning Plaintiff's testimony as to the impact of stress on her ability to perform the demands of basic work activity.

### d. Step Five Analysis

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).

As part of his step five analysis, the ALJ posed a hypothetical claimant to Victor Alberigi, a vocational expert ("VE"), and asked the VE to opine as to whether a claimant with the age, education, work experience, and limitations in the hypothetical could perform any jobs in the national economy. (T at 27).

A hypothetical given to the VE is appropriate and may be relied upon by the ALJ if the hypothetical fully encompasses the claimant's limitations. Magee v. Astrue, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing Varley v. Sec'y of

Health & Human Servs., 820 F.2d 777, 799 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." Id.

However, "the ALJ must present a hypothetical that incorporates all of a claimant's impairments." Salmini v. Astrue, No. 3:06–CV–458, 2009 WL 1794741, *11 (N.D.N.Y. June 23, 2009) (citation omitted). If the ALJ poses "hypothetical questions [that] do 'not include all of a claimant's impairments, limitations and restrictions, or [are] otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability.'" Id. (quotation omitted).

In this case, the hypothetical provided to the VE did not include any limitation with regard to stress.[7] (T at 57-62). Because the issue of stress-related limitations was not adequately developed by the ALJ or addressed by the VE, the hypothetical cannot constitute substantial evidence to support the Commissioner's conclusion of no disability.

**3.  Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8

---

[7]The VE was asked to assume a claimant with moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (T at 58).

(E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, and that this case be remanded for further administrative proceedings.

Respectfully submitted,

Dated:  February 11, 2013

Syracuse, New York

_____

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.


February 11, 2013

_____

Victor E. Bianchini
United States Magistrate Judge